# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL T. ALEXANDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-179-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Michael T. Alexander requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 22nd, 1978, and was thirty-three years old at the administrative hearing (Tr. 33, 40). He has a graduate equivalent diploma and has worked as an account manager, computer tech, delivery person, and manufacture worker (Tr. 43, 204). The claimant alleges he has been unable to work since January 30, 2009 due to mood disorders, mixed connective tissue disease, arthritis, and lung problems (Tr. 192).

## Procedural History

On March 29, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated December 20, 2011 (Tr. 16-25). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i.e.*, he could lift/carry ten pounds occasionally and less than ten pounds frequently; sit

for about six hours in an eight hour work day and stand/walk for at least two hours in an eight hour work day; can occasionally climb, balance, stoop kneel, crouch and crawl; can frequently handle and finger; can understand, remember, and carry out simple, routine and repetitive tasks; can appropriately respond to supervisors, co-workers, and usual work situations but could have no contact with the general public (Tr. 22). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there were jobs that he could perform, *i. e.*, small parts assembler, cuff folder, addressing clerk, and surveillance systems monitor (Tr. 24-25).

## Review

The claimant contends that the ALJ: (i) failed to evaluate the medical evidence properly by using an incorrect legal standard when considering Dr. Thomas Lynn's opinion, (ii) did not perform a proper RFC analysis by failing to consider the claimant's undifferentiated autoimmune disorder and/or mixed connective tissue disease at steps four and five of the sequential analysis, (iii) did not properly address claimant's obesity when determining the RFC, and (iv) erred in his credibility analysis by comparing claimant's testimony to a predetermined RFC. The Court agrees with the claimant's second and third contentions and the decision of the Commissioner should therefore be reversed.

The ALJ found that that the claimant had the severe impairments of rheumatoid arthritis, meningitis, obesity, attention deficit hyperactivity disorder (ADHD) and bipolar disorder (Tr. 18). The medical records reveal that the claimant was hospitalized in June, 2008 and was discharged with a diagnosis of meningitis of a questionable etiology,

elevated liver function tests, thrombocytopenia (resolving), a history of Reynaud's syndrome, possible autoimmune disorder with positive ANA, positive SSA, positive RNP and rheumatoid factor, nausea and vomiting (resolved) and hyponatremia (resolved) (TR. 315-341). Claimant was again hospitalized in July, 2008 and was discharged with a diagnosis of aseptic meningitis and lupus, both of which were believed to be the result of a reaction to the medication Lamictal, headache secondary to aseptic meningitis, and acute renal failure (resolved). Some lab test results came back being consistent with Lupus. Claimant was advised to stop taking Lamictal and to follow up with a rheumatologist (Tr. 288-309). Claimant began seeing Dr. Calvin Manual, a rheumatologist, in September of 2008 and was diagnosed with rheumatoid arthritis with connective tissue disease overlap and prescribed Plaquenil (Tr. 378-381). Claimant began seeing Dr. Natalya Markoff at McBride Clinic in February of 2010 who also diagnosed claimant with mixed connective tissue disease and prescribed a Prednisone regimen (Tr. 412).

The medical evidence further reveals that the claimant underwent a psychiatric assessment on April 15, 2008 with Dr. Robert V. Hensley, who diagnosed him with ADHD inattentive type, bipolar disorder type II, and social anxiety disorder. Dr. Hensley noted a long history of ADHD which was initially diagnosed when claimant was 19 years old. Dr. Hensley prescribed claimant Adderall XR 15 mg every morning, Clonazepam 1 mg twice daily, Abilify 5mg ½ tab with evening meal, Remeron 30 mg at bedtime and Lunesta (Tr. 276-277). Claimant was hospitalized on January 27, 2010 for bouts of depression and confusion. He was treated with new anti-depressants (Pristiq 50, Effexor

37.5, Amitriptyline 100 and Risperdal .5). Claimant was put on routine Behavioral Medicine orders but became agitated on January 29, 2010 and left against medical advice, did not make an appointment and did not receive any discharge medications (Tr. 397-400).

Additionally, the claimant's wife completed a Third Party Function Report based on the claimant's abilities. She indicated that he sleeps late into the day, that she brings him his meals in bed and that he watches movies from his bed for the majority of his day (Tr. 221); that he requires assistance getting dressed and does not bathe regularly or perform normal hygiene tasks (Tr. 222); that he does not do any cooking or household chores (Tr. 223); and that he does not leave the house by himself (Tr. 224). She also stated that he no longer engages in any of his hobbies (Tr. 225).

At the administrative hearing, the claimant testified that there have been short periods of time since January of 2009 that medications have helped his functioning, but with the side effects and complications he has had from those medications, he has deteriorated overall since then (Tr. 52). He stated that the rheumatoid arthritis most affect his hands and feet (Tr. 54). He stated that there is not a time that he is self-sufficient and that he is bedridden ninety-five percent of the time (Tr. 59, 64). He testified that he can read a one or two page magazine article, but has difficulty writing more than two sentences without pain (Tr 45). He further testified that he can make change both with and without a calculator, but his medications and ADHD mean that he is slower without a calculator than he once was (Tr. 46). He also stated that he has not

engaged in his hobby of writing and producing music since July of 2009 due to pain in his hands (Tr. 48-50).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence. At step three, the ALJ stated he considered the listings for autoimmune disease impairments and mental disorders, as well as evaluated the claimant's obesity under SSR 02-1p, and then stated that claimant did not meet a listing. This was the extent of the ALJ's discussion of the claimant's mixed connective tissue disease and obesity because there is no further mention of either impairment anywhere in his step four or step five analysis. The ALJ was required to assess the combined effect of all the claimant's impairments in assessing his RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). Here, the ALJ failed to even discuss

each impairment individually, much less whether any of the medical evidence demonstrated any additional and cumulative effects. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-01p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). Instead, he simply adopted the RFC prepared by the State reviewing physicians, along with limitations that would still allow him to find the claimant not disabled. (Tr. 426-432, 497-513). *See Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (discussing requirements of SSR 02-01p and finding that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments.") [unpublished opinion]. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other

impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *6.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's severe impairment of obesity and his impairment of mixed connective tissue disease, and whether they had any additional and cumulative effects, when assessing his RFC. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 30th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**